UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMPSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MEGAN J. BRENNAN, et al.,<br><br>    Defendants. | Case No. 17-cv-03798-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 11 |

Plaintiff Brian Thompson is a former U.S. Postal Service employee with an auto-immune disorder that interfered with his work; he was terminated after missing work for several weeks during a flare-up. He alleges violations of the Americans with Disabilities Act, the Rehabilitation Act, Title VII of the Civil Rights Act, breach of contract, denial of due process, and intentional infliction of emotional distress. Defendant moves to dismiss all claims. For the reasons below, the Court **GRANTS** Defendant's motion.

The Court notes that Plaintiff failed to file a timely opposition to Defendant's motion; the hearing was postponed and briefing schedule modified to permit Plaintiff an opportunity to file an opposition. *See* Docket Nos. 18, 19, 20. On the morning of the re-scheduled hearing, January 19, 2017, Plaintiff's counsel notified the Court that she was in the Superior Court of California awaiting a jury verdict and thus could appear only by phone. The Court attempted to accommodate counsel's request. When the matter initially came up for hearing, the Court called counsel, who answered the phone but stated that the jury had just returned and that she had to appear in court. The Court informed her that it would continue the matter until later that day. Approximately an hour later, the Court attempted to reach Plaintiff's counsel again but this time she did not answer the call. Thus, the Court was forced to hear the matter in Plaintiff's absence.

Accordingly, although Plaintiff has had ample opportunity to respond to Defendant's motion and appear at a hearing, the Court heard the motion and granted Defendant's motion to dismiss with leave to amend.

## I. FACTUAL BACKGROUND

Plaintiff Brian Thompson was a mail handler for Defendant United States Postal Service for 25 years. Compl. ¶ 8. In January 2010, he was diagnosed with Common Variable Immunodeficiency Disorder (CVID), a genetic disorder that impairs the immune system. *Id.* ¶ 10. Persons with CVID are "highly susceptible to infection from foreign invaders such as bacteria, or more rarely, viruses and often develop recurrent infections." *Id.* The condition is not curable but can be stabilized through regular treatment. *Id.* Plaintiff's treatment "requires regular intravenous immunoglobulin replacement therapy infusions." *Id.*

Plaintiff alleges he can perform his job duties with reasonable accommodations, such as adjusting his hours or the cleanliness of his working conditions. *Id.* ¶ 11. His position involves "large sacks and boxes of dust and dirt, which Plaintiff could easily inhale dust into his lungs," and "working late overnight hours in the cold." *Id.*

A. Past Issues Related to CVID

In 2010, Plaintiff was terminated after missing work, but was reinstated after his plant manager realized he was suffering a CVID flare. *Id.* ¶ 12. On February 24, 2012, he requested leave under the Family and Medical Leave Act (FMLA) after another flare, along with a physician's documentation describing his prognosis. *Id.* ¶ 13. He did not take leave at that time but wanted to place the medical information on record. *Id.*

The following year, on March 12, 2013, Plaintiff was out on medical leave without pay when he received a letter from his supervisor that he would be dismissed effective April 16, 2013. *Id.* ¶ 14. He sent a letter to his supervisors and a labor representative reminding them he was on leave. *Id.* ¶ 17; Compl., Ex. A. On April 11, 2013, Plaintiff's physician wrote a letter elaborating on his condition and stating that Plaintiff had required time off to address multiple issues including "infections, eczema, asthma, sleep apnea and depression." *Id.* ¶ 15. Around April 10, 2013, the plant manager and another supervisor called Plaintiff to "assure [him] he would not be fired while

2

United States District Court
For the Northern District of California

1  he was sick and out on leave." *Id.* ¶ 19. However, "Shop Steward Thomas Mays, without
2  Plaintiff's knowledge or consent, agreed to place Plaintiff on a 7-day suspension in lieu of his
3  notice of removal." *Id.* ¶ 20.

4  On July 17, 2014, Plaintiff again submitted an FMLA application "as [a] precautionary
5  measure after receiving threats of suspension for missing work due to illness." *Id.* ¶ 21.

B.  Issues Precipitating This Litigation

On January 9, 2015, Plaintiff began to call in sick again due to CVID flare-ups. *Id.* ¶ 23. He alleges he called every three days as required. *Id.* He went to the emergency room on February 1, 2015 where he was diagnosed with pneumonia and the E.R. allegedly faxed a letter to management at SF-ISC. *Id.* ¶ 24. On February 11, 2015, Plaintiff received an e-mail from human resources confirming he was on leave without pay. *Id.* ¶ 25. On February 18, 2015, Plaintiff submitted another letter from a physician stating that he "has been ill due to a chronic condition and is [currently] undergoing treatment," and requesting that he be excused from work. *Id.* ¶ 26.

On April 1, 2015, USPS sent Plaintiff a "Notice of Removal" stating he would be removed from his position effective May 9, 2015 for failure to maintain regular attendance, excessive absences, and being AWOL. *Id.* ¶ 27. Defendant submitted a copy of the letter in support of its motion. *See* Wang Decl., Ex. A.[1] It claims that Plaintiff stopped appearing for work on January 9, 2015, failed to provide his supervisor with information about his whereabouts, failed to appear at two Investigative Hearings of which he was notified by letter January 22 and February 27. *Id.*; *see also* Compl. ¶ 30. Plaintiff alleges the letters were mis-addressed and he denies receiving them. *Id.* ¶ 31. Had he received them, he claims he would have been too sick to attend the interviews. *Id.* ¶ 32.

Plaintiff filed a grievance in connection with the Notice of Removal with his union on May 4, 2015. *Id.* ¶ 34. In June 2015, he contacted USPS's Reasonable Accommodations Committee for the first time to request accommodations. *Id.* ¶¶ 36-37.

---

[1] The Court may consider the notice of removal, the various EEOC materials, the arbitration and grievance materials, and the collective bargaining agreement because they are incorporated by reference into the complaint. *See U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

On November 25, 2015, Plaintiff's physicians cleared him to return to work on December 15, 2015, but when he contacted his Shop Steward, he learned for the first time that "he had been relieved from his duties due to allegedly being 'AWOL.'" In the same call, his Shop Steward asked if he wished to attend an arbitration hearing on his termination for December 3, 2015. Plaintiff claims he was unaware of the hearing prior to that time, and that the hearing ultimately turned out to be an appeal of a prior proceeding "which he had not been invited to and could not have attended." *Id.* ¶ 39. He attended the hearing and contested termination. *Id.* ¶ 40.

C. Labor Arbitration Decision

Defendant submitted a copy of the final arbitration decision, dated February 15, 2016. *See* Wang Decl., Ex. B. The arbitrator denied the grievance and found that the termination was justified by good cause. *Id.* The arbitrator found that "the record is replete with evidence that [Plaintiff] in fact did receive the letters which were sent by certified mail with tracking numbers, were not returned to the Postal Service, and as indicated, for example . . . were even signed for by someone on behalf of Mr. Thompson." *Id.* at 4. The only medical documentation or contact from Plaintiff to the employer during the early 2015 CVID flare-up was a February 18, 2015 letter from his doctor which the arbitrator deemed was "ambiguous and late, and does not justify his failure to respond himself to Management as to why he was absent during the early part of 2015." *Id.* at 6.

D. EEOC Complaints and Dispositions

Plaintiff initiated an Equal Employment Office (EEO) process on March 1, 2016 alleging discrimination on the basis of race, national origin, genetic information, and in reprisal for prior protected activity. *Id.* ¶ 122. On July 11, 2016, the EEO issued a final decision on the complaint, which Plaintiff appealed; the agency issued a notice of right to sue on April 4, 2017. *Id.* ¶ 124. Defendant has attached the EEOC complaints, the Equal Employment Opportunity Commission ("EEOC") investigation findings, and the EEOC's appeal. *See* Wang Decl., Exs. C-F.

The July 11, 2016 dismissal of the EEO complaint was based on failing to initiate the process within 45 days of his Notice of Removal. *See* Wang Decl. Ex. E. EEOC concluded that plaintiff "offered no reasonable explanation for [his] failure to request pre-complaint counseling in a timely manner." *Id.* at 4. It noted that he filed an arbitration grievance when he received the

4

1 Notice of Removal, but did not simultaneously file an EEO claim. *Id.* at 3. Further, it observed that Plaintiff "did not claim that [he was] unaware of the time limit for contacting an EEO Counselor and the record contain[ed] an affidavit attesting to the fact that the EEO poster is appropriately displayed at [his] facility." *Id.* EEO also noted that Plaintiff had engaged in three prior EEO complaint processes between 2010 and 2013, and therefore he was "deemed to have constructive knowledge of the EEO complaint process and the applicable time periods for filing claims." *Id.* at 4. It also noted that Plaintiff "offered no evidence that would serve to persuade the agency that [he was] so incapacitated by [his] condition as to render [him] physically or mentally unable to make timely contact and request pre-complaint counseling." *Id.* To the extent that Plaintiff was challenging the outcome of his grievance proceeding, the EEO concluded that his exclusive remedy was whatever was provided by his collective bargaining agreement, and that he could not engage in an improper collateral attack through the EEO process.

Plaintiff appealed to the EEOC, which affirmed the initial dismissal for the reasons asserted on April 4, 2017. *See* Wang Decl., Ex. F.

## II. DISCUSSION

Defendant moves to dismiss all claims.

### A. ADA Claims

Defendant moves to dismiss disability discrimination claims under Title I of the ADA, 42 U.S.C. § 12112, because Congress expressly excluded the federal government from covered employers under the statute. *Id.* § 12111(5)(B) ("The term 'employer does not include . . . the United States [or] a corporation wholly owned by the government of the United States . . . ."). Plaintiff concedes that he may not bring a claim under the ADA. The Court therefore **GRANTS** Defendant's motion to dismiss the ADA claim with prejudice.

### B. Failure to Exhaust Administrative Remedies for Title VII and Rehabilitation Act Claims

#### 1. Plaintiff Was Required to Timely Exhaust His Administrative Remedies

To bring a claim under the Rehabilitation Act or Title VII, a plaintiff must timely exhaust their administrative remedies. *See Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985). Federal employees alleging discrimination

under these laws must contact an EEO office within 45 days of an alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1). "Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite." *Leong*, 347 F.3d at 1122. Failure to comply with this pre-filing requirement is fatal to a federal employee's discrimination claims in federal court absent waiver, estoppel, or equitable tolling. *See Kraus v. Presidio Trust Facilities Div. Res. Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009); *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (the 45-day clock applies to each discrete act, even if related to earlier acts); *Lyons v. England*, 307 F.3d 1092, 1005 (9th Cir. 2002). In the case of an allegedly discriminatory termination, the limitations period begins to run when the employee receives notice of the decision, not when the termination actually takes effect. *See Delaware State College v. Ricks*, 449 U.S. 250, 257-58 (1980) (discriminatory acts occurred and filing limitations period began to run at the time tenure decision was made and communicated to employee, even though the effects of the decision (loss of the position) did not occur until later).

Plaintiff's Notice of Removal was issued on April 1, 2015, but Plaintiff did not contact an EEO counselor until March 1, 2016. Compl. ¶¶ 27, 122. Under *Delaware*, Defendant correctly argues that the clock began to run on April 1, 2015. Plaintiff's argument that he may opt to use the grievance procedure under his collective bargaining agreement in lieu of contacting an EEO representative is unavailing. The sole case cited did not address failure to comply with an EEO jurisdictional timeline and did not involve any Title VII or Rehabilitation Act claims; rather, it held that exhaustion of the grievance process is required before bringing a claim for breach of a collective bargaining agreement or the duty of fair representation. *See McCreary v. Potter*, 273 F.Supp.2d 106, (D.D.C. 2003) (exhaustion of grievance required before claim for breach of duty of fair representation or collective bargaining agreement may be brought). Moreover, the two processes address different issues: the grievance process addresses violations of the collective bargaining agreement, while an EEO process addresses Rehabilitation Act and Title VII violations. *See*, *e.g.*, *Smith v. Potter*, 445 F.3d 1000, 1007 (7th Cir. 2006) (dismissing Title VII claim as untimely where removal was challenged through grievance process but contact with EEO

counselor was not initiated within 45 days)*, overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Thus, the timeline runs from the date of his Notice of Removal, not the end of his grievance proceedings. Plaintiff failed to initiate the EEO process within 45 days after his Notice of Removal.

Relatedly, Plaintiff claims that retaliation claims are exempt from the administrative pre-filing requirements. Plaintiff is incorrect. *See* 29 C.F.R. § 1614.103 (stating that regulation covers complaints of "employment discrimination and retaliation" and that "[c]omplaints alleging retaliation prohibited by these statutes are considered to be complaints of discrimination for purposes of this part"); *see also Carson v. Sim*, 778 F.Supp.2d 85 (D.D.C. 2011). The sole case cited by Plaintiff says nothing about exhaustion requirements, but merely affirms that a retaliation claim based on a complaint of discrimination may be actionable even if the discrimination itself is not. *See Place v. Abbott Labs.*, 215 F.3d 803, 810-11 (7th Cir. 2000).

### 2. Plaintiff Has Not Demonstrated That Equitable Tolling Is Merited

Plaintiff may therefore only bring his claims if he can support grounds for estoppel, equitable tolling, or waiver. In his opposition, Plaintiff argues he was never advised of his right to contact the EEOC and the Notice of Removal did not indicate he had a right to do so, and states that an incapacitating illness may be an excuse (but does not specifically claim he was incapacitated and therefore unable to file a timely claim). Opp. at 6-8. This appears to be an equitable tolling argument. Equitable tolling may "excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Id.* A plaintiff carries the burden of pleading facts to support equitable tolling. *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). The doctrine "is not available to avoid the consequences of one's own negligence." *Hensley v. U.S.*, 531 F.3d 1052, 1058 (9th Cir. 2008) (quotation omitted).

Plaintiff's allegations do not merit equitable tolling. Though he claims the Notice of

Removal did not inform him of his right to pursue an EEO grievance, he does not allege he was otherwise unaware of the EEO process. Moreover, the record indicates that Plaintiff has been involved in an EEO process on at least three prior occasions, so he was familiar with it, as the EEO noted. *See Gill v. Gen. Servs. Admin.*, Case No. 14-cv-02999-MEJ, 2014 WL 6469377, at *4 (N.D. Cal. Nov. 18, 2014) ("Previous experience with the administrative EEO process alone is enough to put [plaintiff] on notice of the filing requirement."). Moreover, Plaintiff does not allege that the USPS otherwise failed to put him on notice, such as through workplace posters, as observed by the EEO.

Further, though Plaintiff generally states that incapacitation by illness may be a basis for equitable tolling, he does not actually claim that he himself was incapacitated and therefore unable to fulfill the filing requirements. It is highly unlikely here. Despite his illness, he was able to file a union grievance on May 4, 2015 (within 45 days of the issuance of the April 1, 2015 notice of removal). He fails to explain how he could be so incapacitated that he could not contact the EEO yet was capable of filing a timely union grievance. *See* Compl. ¶ 34.

Moreover, even if he were ill, Plaintiff has not explained why he could not have initiated the EEO process prior to March 1, 2016, eleven months after receiving the Notice of Removal, particularly where he claims that he was capable of returning to work full-time as of December 15, 2015. *Id.* ¶ 6.

Accordingly, Plaintiff has failed to demonstrate that equitable tolling is merited here. Because Plaintiff's counsel did not appear at the hearing, the Court was unable to ascertain whether additional facts may exist to support equitable tolling. Though the Court has doubts whether facts meriting equitable tolling exist in light of the issues discussed above, the Court will give Plaintiff one opportunity to amend his complaint to attempt to state such facts if he has non-frivolous and good faith grounds to do so. Defendant's motion to dismiss the Title VII and Rehabilitation Act claims is **GRANTED**.

C.  Breach of Contract Claim

Plaintiff brings a breach of contract claim based on the U.S. Postal Service's purported violations of terms in the Employee Labor Relations Manual, which was given to him when he

began work. The ELM states that "[a]n employee normally will not be separated from the service because of absence due to a personal illness or injury for a period of less than 1 year." Compl. ¶ 82. Plaintiff also alleges a breach because he was fired for discriminatory and retaliatory reasons and without cause. *Id.* ¶¶ 83-84.

Under the doctrine of sovereign immunity, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). A waiver of sovereign immunity "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Congress has created a right for postal service employees to sue the United States Postal Service for breach of a contract negotiated by a labor organization. *See* 39 U.S.C. § 1208(b); *Miles v. U.S. Postal Serv.*, 561 F.2d 1348, 1350 (9th Cir. 1977). Thus, Plaintiff may bring a claim for breach of contract, but only to the extent that the breach is premised on a collective bargaining agreement or other contract negotiated by the union representing postal service employees.

Here, Plaintiff only alleges violations of the Employee Labor Manual, which is a Postal Service regulation. *See* 39 C.F.R. § 211.2(a)(2). He has not argued or attempted to show that the provisions cited were incorporated into the CBA such that they could support a cause of action for breach of contract under *Miles*. Accordingly, he fails to state a claim.

Furthermore, even if Plaintiff could allege incorporation of the ELM into the CBA, it appears his claim would be untimely because he failed to file suit within the six-month statute of limitations, which began to run when the final arbitration decision was issued in February 2016, nine months before he filed suit in July 2017. *See Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 154-55, 164, 172 (1983) (six-month limitations period applies to employee claim for breach of CBA under Section 301 of Labor Management Relations Act); *Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1204 (11th Cir. 2002) (cause of action accrues at "the point at which the grievance procedure was exhausted"); *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 893 F.2d 1117, 1119-20, 1122 (9th Cir. 1990) (relying on Section 301 cases to interpret Postal Reorganization Act because statutes are nearly identical); *Miles*, 561 F.2d at 1349-50 (same). As discussed above, no facts are alleged to merit equitable tolling.

The Court thus **GRANTS** Defendant's motion to dismiss the breach of contract claim. As stated above, Plaintiff may have leave to amend to attempt to plead facts in support of equitable tolling if he has a good faith and non-frivolous basis for doing so.

D. Due Process Claim

Plaintiff brings a claim alleging violations of due process, but the basis for it is muddled. In essence, he claims that (a) he did not receive notice of or opportunity for a hearing; (b) he was "preference eligible" and therefore entitled to a different process from what he was given; and (c) there was a conflict of interest because the person tasked with prosecuting on behalf of USPS at the arbitration proceeding was also reviewing his request for reasonable accommodation. *See* Compl. ¶¶ 88-99.

In *Winston v. U.S. Postal Serv.*, 585 F.2d 198 (7th Cir. 1978), the court recognized that postal service employees have a property interest in continued employment entitled to due process protection. *Id.* at 208-209. The court concluded, however, that the procedures afforded under the collective bargaining agreement covering postal employees (which provides for a written notice of discharge explaining the reasons for discharge, a right to file grievances, a right to appeals of the discharge, and a right to request arbitration of a grievance) were sufficient to satisfy the requirements of the due process clause. *Id.* at 209. The procedures available to Plaintiff here under the collective bargaining agreement do not appear to be materially different.

Thus, the question is not whether the general procedures were adequate, but rather, whether the actual process afforded to Plaintiff satisfied due process in this instance. Plaintiff was issued an April 1, 2015 Notice of Removal, in connection with which he filed a labor grievance on May 4, 2015. Compl. ¶¶ 27, 34. He claims that between the time of his grievance and his December 1, 2015 phone call with his shop steward, he received no updates or information about the grievance process but then heard for the first time that he could attend a hearing on December 3, 2015. *Id.* ¶ 39. Plaintiff has not clearly argued or alleged what additional process he was entitled to between May 4 and the December 3 hearing. Further, he does not allege that his union representative was also excluded from the process, and that does not appear to be the case based on the record of proceedings.

As for the hearing itself, although he claims that he was sick, that he only received two-days' notice, and that he was not offered an opportunity to be represented by counsel, he states that at the hearing he "contested his termination, stating that [he] never signed for the letters requesting investigative interviews, and that he was documented out on leave without pay since January." *Id.* ¶ 42. Moreover, the arbitration decision does not indicate that Plaintiff requested and was denied additional process. Rather, it indicates that "[t]he parties presented evidence, although the Grievant himself did not testify." Wang Decl., Ex. B at 4. The union, on Plaintiff's behalf, submitted medical documentation regarding Plaintiff's illness, including post-hearing briefs arguing its position. *Id.* at 5. Thus, even assuming that Plaintiff had a due process right to more notice before his hearing (a proposition for which Plaintiff has not cited any case-law), he has not alleged how the delayed notice prejudiced him, *i.e.*, what additional material he could have submitted or arguments he could have made had he been given more time to prepare.

Plaintiff also claims that he was "preference eligible" and therefore the wrong process was followed in connection with his termination. A "preference eligible" employee is defined by statute to include a number of veteran-related statuses, *see* 5 U.S.C. § 2108(3), none of which are alleged in the complaint. But even if Plaintiff was preference eligible, the collective bargaining agreement provides preference eligible employees the option of choosing between the normal grievance arbitration procedure or an appeal to the Merit Systems Protection Board. *See* Compl. ¶ 94. Plaintiff does not allege that he made such an appeal to the MSRB. Moreover, the complaint reflects that he pursued the regular grievance process. The fact that he may have had other options which he chose not to pursue does not constitute a violation of his due process rights.

Plaintiff also suggests that there was a conflict of interest insofar as the USPS's "prosecutor" at his arbitration proceeding in February 2016, Labor Relations Specialist Mayon Sanesanong, was the same official reviewing his request for reasonable accommodation in June 2015. *See* Compl. ¶¶ 37-38. It is true that due process requires a neutral and impartial adjudicator, and that having an official who acted in an enforcement capacity may pose a problem. *See*, *e.g.*, *Concrete Pipe and Prods. of Cal., Inc. v. Construction Laborers Pens. Trust for So. Cal.*, 508 U.S. 602, 618 (1993). However, Plaintiff is confusing two separate issues. Sanesanong was

11

tasked with reviewing Plaintiff's independent request for accommodation, filed after his removal had taken effect. The propriety of the request for accommodation was not at issue in the arbitration proceeding. Rather, the arbitration proceeding concerned Plaintiff's removal. In any case, even if it was, it would not have been unfair because Sanesanong was *not* the arbitrator or adjudicator—he was the prosecutor. Thus, the arbitration could not have violated his due process rights simply because Sanesanong presented the USPS's case.

Finally, to the extent Plaintiff brings his due process claim in an attempt to challenge the merits of the arbitrator's conclusion, he is foreclosed from doing so because the collective bargaining agreement provides that the arbitrator's decision is final and binding as to non-preference Postal Service employees. *See* Wang Decl., Ex. G at 80-81 (CBA, Art. 15 ¶ 15.4(A6) ("All decisions of an arbitrator will be final and binding.")). The review of a dismissal of a postal service employee is governed by the collective bargaining agreement. *See* 5 U.S.C. § 1005(a)(1)(A); *see also Smith v. Daws*, 614 F.2d 1069, 1073 (5th Cir. 1980) ("Having availed herself of the grievance-review procedures of the collective-bargaining contract, the plaintiff-employee is likewise subject to the contract's provision that the arbitrator's decision is final and binding. . . . [A]dministrative or judicial review of the correctness of the arbitrator's findings and rationale [are not authorized.]"); *Abernathy v. U.S. Postal Serv.*, 740 F.2d 612, 617 (8th Cir. 1984) (same).

Accordingly, Plaintiff has failed to plead a due process violation and, to the extent he simply seeks to re-litigate the merits of the arbitration proceeding, this Court lacks jurisdiction to do so. The Court **GRANTS** Defendant's motion to dismiss. Plaintiff may amend if he can allege a violation of the CBA or that the ELM was incorporated into the CBA, *and* that grounds exist to toll the statute of limitations.

E. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff brings an intentional infliction of emotional distress (IIED) claim. Defendant correctly argues that such torts may not be brought against the Postmaster General because the United States is the only proper defendant under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). *See Smith v. United States*, 507 U.S. 197, 201 (1993); 28 U.S.C. §§ 1346(b), 2674,

2679(a); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984). The FTCA "waives the sovereign immunity of the United States for certain torts committed by federal employees under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* This remedy is "exclusive of any other civil action or proceeding for money damages. 28 U.S.C. § 2679(b)(1). Thus, the United States is substituted as Defendant in place of the Postmaster.

Under the FTCA, Plaintiff's tort claims must be dismissed because he fails to plead that he made an administrative demand in writing which was denied before filing suit. *See* 28 U.S.C. § 2675(a); *Burns v. U.S.*, 764 F.2d 722, 723 (9th Cir. 1985) ("The claim requirement of section 2675 is jurisdictional in nature and may not be waived.").

In opposition, Plaintiff does not deny the administrative exhaustion problem but argues that it is "a curable defect by amendment" since "[t]he statute of limitations has not yet run for any torts." Opp. at 18. Even so, amendment cannot cure the claim because the litigation would still be premature until the administrative process is exhausted. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process. Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice, which must assume the defense of such actions."); *see also Pineda v. Golden Valley Health Ctrs.*, No. CV F 10-0847 LJO GSA, 2010 WL 2629286 (E.D. Cal. June. 28, 2010) (dismissing FTCA claim even though administrative claim had been where no final decision had yet been received and claim was not deemed denied). The Court has not acquired subject matter jurisdiction over the FTCA claims so Defendant's motion is **GRANTED**.

///
///
///
///
///
///

13

### III. <u>CONCLUSION</u>

For the reasons above, the Court **GRANTS** Defendant's motion to dismiss all claims. If Plaintiff can present a good faith and non-frivolous factual basis for equitable estoppel to support his Title VII, Rehabilitation Act, and breach of contract claims, then he may file an amended complaint within 30 days.

This order disposes of Docket No. 11.

**IT IS SO ORDERED**.

Dated: January 25, 2018

_____
EDWARD M. CHEN
United States District Judge