UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN THOMPSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MEGAN J. BRENNAN, et al.,<br><br>　　　　Defendants. | Case No. 17-cv-03798-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE**<br><br>Docket No. 36 |

Defendants move to dismiss Plaintiff Brian Thompson's First Amended Complaint for failure to state a claim. Plaintiff did not file a brief in opposition but has filed a declaration. This matter is appropriate for resolution without oral argument. *See* Local Civ. R. 7-1(b). The motion hearing scheduled for 1:30 p.m. on May 24, 2018 is **VACATED**. For the reasons below, Defendants' motion is **GRANTED** and all claims are **DISMISSED**.

## I.　　FACTUAL AND PROCEDURAL BACKGROUND

For a fuller description of Mr. Thompson's allegations, the Court refers to its January 25, 2018 order granting Defendant's motion to dismiss. *See* Docket No. 29. In short, Mr. Thompson is a former U.S. Postal Service ("USPS") employee with an auto-immune disorder that interfered with his work. In relevant part, Mr. Thompson began calling in sick due to flare-ups on January 9, 2015. *See* First Amended Complaint ("FAC") ¶ 22. Mr. Thompson claims that he provided intermittent updates and doctor's notes to USPS, *see* FAC ¶¶ 23-25, but USPS sent him a "Notice of Removal" letter on April 1, 2015 stating that his removal would be effective May 9, 2015. *Id.* ¶ 27. On May 4, 2015, he filed a formal grievance regarding the Notice of Removal with his labor union. *Id.* ¶ 34. While his grievance was pending but after the effective date of the notice of removal, Mr. Thompson began requesting reasonable accommodations from the USPS's

1    Reasonable Accommodations Committee. *Id.* ¶¶ 39-41. Although he was provided a packet of

2    forms to complete, which he filled and submitted, the committee never acted upon his request (or

3    at least did not inform him of any action on it). *Id.*

4    On November 15, 2015, Mr. Thompson's primary care doctor cleared him to return to

5    work full-time as of December 15, 2015, but when he informed his supervisor, he was told that he

6    had been relieved from his duties and informed of a labor arbitration hearing to be held December

7    3, 2015. *Id.* ¶ 42. It was at that time that Mr. Thompson claims he learned that he had been

8    terminated. He alleges that while on medical leave for his CVID flare-ups, he also "suffered from

9    severe emotional and mental decline" that prevented him from "fully understand[ing] that USPS

10   intended to actually remove him from his position." *Id.* ¶¶ 49-50. He states that he was "under

11   the sincere belief that he remained employed by USPS," *id.* ¶ 51, and that he was "operating under

12   the assumption that USPS had made a mistake that, with sufficient documentation, would be

13   corrected." *Id.* ¶ 52. His "physical and mental incapacity, and lack of information regarding the

14   process, led him to believe that he was not 'really fired' until he received notice of the arbitration

15   decision." *Id.*

## II. DISCUSSION

Mr. Thompson brings claims for disability discrimination and retaliation, breach of contract, and denial of due process all arising out of his termination. The Court's prior holding with respect to each claim will be summarized as needed below.

A.  Disability and Retaliation Discrimination

Regarding Plaintiff's claims for race and disability discrimination and retaliation under the Rehabilitation Act and Title VII of the Civil Rights Act of 1964, the Court previously held that Mr. Thompson had failed to exhaust his administrative remedies by timely initiating the Equal Employment Opportunity process. *See* Docket No. 29 at 5-7. In particular, the 45-day limitations period began to run on April 1, 2015 (the date the Notice of Removal was issued), but Mr. Thompson did not contact an EEO counselor until March 1, 2016. *Id.* at 6. The Court gave Plaintiff leave to amend to attempt to state facts supporting equitable tolling. *Id.* at 7.

Mr. Thompson has not pled facts to support equitable tolling. First, equitable tolling may

"excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (quotation omitted). The record indicates that Mr. Thompson had actual notice; he does not dispute he received the Notice of Removal. Moreover, on at least one prior occasion, Mr. Thompson filed (or directed the filing of) an EEO complaint regarding a Notice of Removal he received in 2010. *See* Wang Decl., Ex. A.[1] That is sufficient to conclude that Plaintiff was familiar with the process. *See Gill v. Gen. Servs. Admin.*, Case No. 14-cv-02999-MEJ, 2014 WL 6469377, at *4 (N.D. Cal. Nov. 18, 2014) ("Previous experience with the administrative EEO process alone is enough to put [plaintiff] on notice of the filing requirement."). Moreover, Plaintiff does not allege that he was unaware of the 45-day filing period. Plaintiff therefore may not invoke ignorance of the filing deadline to justify his late claim.

Second, Plaintiff has not shown that his delay was justified by, *e.g.*, incapacitation that prevented him from making a timely claim. *See Seattle Audobon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991) (equitable tolling may apply when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time"). Though it is not the case that a plaintiff must be "completely . . . disabled" to warrant equitable tolling as Defendants suggest, equitable tolling should not be awarded when a plaintiff is nevertheless "able to file paperwork, converse with doctors, write a letter detailing her claim, and hire legal counsel." *Tatum v. Schwartz*, 405 Fed.Appx. 169 (9th Cir. 2010). Here, multiple factors weigh against equitable tolling to March 1, 2016 (the date Plaintiff actually initiated the EEO process). Plaintiff was able to file a union grievance on May 4, 2015, within 45 days of receiving the Notice of Removal; he began requesting reasonable accommodations from the USPS's Reasonable Accommodations Committee in June 2015 (9 months before filing an EEO complaint); he personally attended a labor arbitration hearing on December 3, 2015; and his doctor cleared him for return to work full-time as of December 15, 2015. Mr. Thompson has therefore not demonstrated that he was so

---

[1] The Court takes judicial notice of the EEO complaint as it is a record filed with a public agency and not subject to reasonable dispute; Plaintiff has not objected to Defendants' reliance on the 2010 complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

3

1 continuously incapacitated that he could not initiate the EEO process earlier than March 1, 2016.

2 Finally, Mr. Thompson has not shown that his delay was excusable for other reasons. For example, "[i]f a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Johnson*, 314 F.3d at 414. Mr. Thompson clearly knew of his potential claim as early as May 4, 2015, when he filed the union grievance. At that time, he knew the absences related to his medical disability were the basis for USPS's Notice of Removal. Indeed, he attests that when he received the notice of removal, "I knew that the law doesn't allow people to [be] fired while they are on medical leave and I had confirmation that I was on medical leave." Thompson Decl. ¶ 11. Though Mr. Thompson claims that he thought the notice of removal was a "mistake," that is belied by the fact that he filed a union grievance shortly after receiving it. *Id.* ¶ 9. His belief "that he was not 'really fired' until he received notice of the arbitration decision" in December 2015, *id.* ¶ 52, is unreasonable in light of the clear language of the Notice of Removal. *See* Docket No. 32, Ex. A at 1 ("This is advance written notice that you will be removed from the Postal Service effective close of business May 9, 2015.").

Accordingly, Mr. Thompson has failed to demonstrate that equitable tolling of his discrimination and retaliation claims is warranted. The Court therefore **DISMISSES** these claims (Counts I, II, and III) with prejudice.

B.  Breach of Contract

Plaintiff also alleges that his termination breached provisions of the Employee Labor Relations Manual (ELM). As the Court previously held, however, that manual is not a collective bargaining agreement, and Congress has only authorized breach of contract actions by employees against the USPS on the basis of a collective bargaining agreement. *See* Docket No. 29 at 8-9 (citing 39 U.S.C. § 1208(b) and *Miles v. U.S. Postal Serv.*, 561 F.2d 1348, 1350 (1977)). The Court granted Plaintiff leave to allege a breach of his collective bargaining agreement, but he has not attempted to do so; he only alleges violations of the ELM. *See* FAC ¶¶ 77-98. His breach of contract claim (Count IV) is therefore **DISMISSED** with prejudice.

4

C. Due Process

Finally, Plaintiff alleges his due process rights were violated because he received inadequate notice of or opportunity for a hearing and there was a conflict of interest because the person representing USPS at the arbitration proceeding was also reviewing his request for reasonable accommodation. *See* FAC ¶¶ 99-129. Regarding inadequate notice, the Court noted that Plaintiff nevertheless appeared at the hearing, presented evidence, did not request additional process, submitted post-hearing briefs and medical documentation, and thus failed to allege how any inadequate notice (assuming he had a right to more notice) prejudiced him. *See* Docket No. 29 at 11. The Court also noted that Plaintiff had not demonstrated a conflict of interest with respect to the USPS representative because his request for accommodation was not at issue in the arbitration proceeding, and, in any case, the fact that the USPS's representative may have been biased against him did not demonstrate that the arbitrator was. *Id.* at 12. The Court nevertheless gave Plaintiff an opportunity to amend his due process claim "if he can allege a violation of the CBA or that the ELM was incorporated into the CBA, *and* that grounds exist to toll the statute of limitations." *Id.* As discussed above, Plaintiff has failed to allege either that equitable tolling is warranted or a violation of his CBA, nor any other basis for a viable due process claim. His due process claim (Count V) is therefore **DISMISSED** with prejudice.

### III. CONCLUSION

For the reasons above, Defendants' motion is **GRANTED** and Plaintiff's claims are **DISMISSED** with prejudice. The Clerk of the Court is directed to enter judgment for Defendants and to close the case.

This order disposes of Docket No. 36.

**IT IS SO ORDERED**.

Dated: April 4, 2018

_____
EDWARD M. CHEN
United States District Judge

5